```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
```
-------------------------------------------------------

| | : | |
|---|---|---|
| COURTNEY NOLL, | : | Case No. 1:17-CV-886 |
| Plaintiff, | : | |
| v. | : | OPINION & ORDER |
| | : | [Resolving Doc. 8, 10, 19] |
| CLUB FIT, LTD., | : | |
| Defendant. | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Courtney Noll brings gender discrimination and Fair Labor Standards Act ("FLSA") claims against her former employer, Defendant Club Fit, LTD.[1] Defendant Club Fit moves to dismiss Plaintiff Noll's gender discrimination claim for failure to state a claim.[2]

For the reasons below, the Court **DENIES** the motion to dismiss.

## I. BACKGROUND

This case concerns whether Plaintiff Courtney Noll's supervisor, Club Fit CEO Phillip Stotter, fired Noll because of her gender, her engagement to be married, and her plans to have children.

Plaintiff Noll worked at Club Fit from June 7, 2016 through January 4, 2017 as an Operations Manager.[3] During that time, she reported to Club Fit's CEO Phillip Stotter.[4]

Plaintiff Noll alleges that Stotter "became aware that Noll had a serious boyfriend and the couple was close to be engaged."[5] In November 2016, Noll says Stotter "confront[ed] her about

---

[1] Doc. 1.
[2] Doc. 8. Plaintiff Noll opposes. Doc 10. Defendant replies. Doc. 19.
[3] Doc. 1 at ¶¶ 16-17.
[4] *Id.* at ¶ 18.
[5] *Id.* at ¶ 34.

the relationship."[6] He "pulled Noll into his office and questioned her about her future with the company."[7] Specifically, Stotter asked Noll if her job at Club Fit was "just a bridge until [she got] married and ha[d] kids."[8] According to Noll, Stotter said if Noll viewed her job that way, he "d[id]n't think it is the right fit."[9] Noll says she responded to Stotter that she "did not plan on leaving the company."[10]

Noll says she was "extremely offended by Stotter interrogating her about whether she was going to get married and have children and equating her starting a family with her not being a committed employee."[11] Further, Noll "felt that Stotter's questions would never be asked of a male employee in her situation."[12]

On December 30, 2016, Noll became engaged to be married.[13] On January 2, 2017, Stotter became aware of Noll's engagement and sent Noll a text message congratulating her.[14]

The next day, Stotter again pulled Noll into his office and "berated her about her future with Club Fit."[15] Stotter again asked if Noll planned to stay at Club Fit and accused her of seeming "miserable" at work.[16] Noll says she again told Stotter that she planned to stay at Club Fit despite her recent engagement.[17]

---

[6] *Id.* at ¶ 35.
[7] *Id.* at ¶ 36.
[8] *Id.* at ¶ 37.
[9] *Id.*
[10] *Id.* at ¶ 38.
[11] *Id.* at ¶ 39.
[12] *Id.* at ¶ 40.
[13] *Id.* at ¶ 41.
[14] *Id.* at ¶ 42.
[15] *Id.* at ¶ 43.
[16] *Id.* at ¶ 44.
[17] *Id.* at ¶ 45.

Case No. 1:17-CV-886
Gwin, J.

The following day, January 4, 2017, Stotter fired Noll.[18] Plaintiff Noll notes Stotter fired her one month after "Stotter threatened Noll's employment if she was planning on getting married and having children, and two days after he found out she was engaged to be married."[19]

On April 26, 2017, Noll filed a complaint against Defendant Club Fit, LTD, for gender discrimination under Ohio Rev. Code § 4112.02 and overtime compensation under the FLSA.[20]

On June 26, 2017, Defendant Club Fit filed a motion to dismiss Plaintiff Noll's gender discrimination claim for failure to state a claim.[21] Plaintiff opposes Defendant's motion.[22]

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[23] The plausibility requirement is not a "probability requirement."[24] The Plaintiff need not try to prove her case in the complaint. But there must be "more than a sheer possibility that the defendant has acted unlawfully."[25]

Federal Rule of Civil Procedure 8 provides the general pleading standard and only requires that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."[26] "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[27] In deciding a motion to dismiss under Rule 12(b)(6), "a

---

[18] Noll alleges Stotter said: "This just isn't working out. Give me your keys and we are done here." *Id.* at ¶ 46.
[19] *Id.*
[20] Doc. 1.
[21] Doc. 8.
[22] Doc. 10.
[23] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).
[24] *Id.* (quoting *Bell Atlantic*, 550 U.S. at 556).
[25] *Id.*
[26] Fed. R. Civ. P. 8(a)(2).
[27] *Iqbal,* 556 U.S. at 678–79 (citations omitted).

3

Case No. 1:17-CV-886
Gwin, J.

court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true.[28]

### III. DISCUSSION

#### A. Gender Discrimination Claim

The Court first addresses whether Plaintiff Noll brings a gender-plus claim.

Defendant Club Fit argues Plaintiff brings a "gender-plus claim," meaning Plaintiff was discriminated against not solely based on gender, but based on her gender coupled with another characteristic.[29] Defendant reads Plaintiff's claim to be that she was discriminated against because she was engaged.[30]

Plaintiff Noll responds that Defendant's motion ignores a central part of her claim. In her Complaint, Plaintiff said that Defendant discriminated against her not only for her engagement, but also for her future plans to have children.[31] Plaintiff says that discriminating against a female for plans to have children is gender discrimination, not "gender-plus" discrimination.[32]

Ohio's employment discrimination statute prohibits discrimination based on a person's sex.[33] In Ohio, "federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112."[34]

With respect to Title VII, "[t]he United States Supreme Court has held that gender discrimination claims based on childbearing capacity fall under [the statute's] protection." [35]

---

[28] *Id.* at 679.
[29] Doc. 8 at 1.
[30] *Id.*
[31] Doc. 10 at 4.
[32] *Id.*
[33] Ohio Rev. Code § 4112.02(A).
[34] *See, e.g.*, *Little Forest Med. Ctr. v. Ohio Civil Rights Comm'n*, 575 N.E.2d 1164, 1167 (Ohio 1991).
[35] *See Ingarra v. Ross Educ., LLC*, No. 13-CV-10882, 2014 WL 688185, at *5 (E.D. Mich. Feb. 21, 2014) (citing *Int'l Union v. Johnson Controls*, 499 U.S. 187, 191-92 (1991)).

4

Case No. 1:17-CV-886
Gwin, J.

In *Int'l Union v. Johnson Controls*, the Supreme Court considered whether a "fetal protection policy" excluding women from jobs because they were capable of pregnancy constituted sex discrimination.[36] The policy classified people on the basis of childbearing capacity rather than fertility. Because only women possess the former characteristic, the Court found that the policy "must be regarded, for Title VII purposes, in the same light as explicit sex discrimination."[37]

Courts of Appeals across the country have read *Johnson Controls* to mean that "classifying employees on the basis of childbearing capacity, whether or not they were already pregnant, 'must be regarded, for Title VII purposes, in the same light as explicit sex discrimination.'"[38]

Therefore, where a woman "alleges that she was targeted for her intent to become pregnant," she brings a sex discrimination claim, not a gender-plus claim.[39]

To successfully plead a sex discrimination claim, a plaintiff must allege facts showing she is a member of a protected class; suffered an adverse employment action; was qualified for the position; and that a similarly-situated person outside of the protected class was treated more favorably than she was.[40]

Plaintiff's allegations make out a gender discrimination claim on the basis of childbearing capacity. Stotter's alleged comments concern Plaintiff Noll's plans to have children. Plaintiff Noll also alleges she is a woman who was fired from a job she was otherwise qualified for, and

---

[36] *Int'l Union*, 499 U.S. at 191-92.
[37] *Id.* at 199.
[38] *In re Union Pac. R.R. Employment Practices Litig.*, 479 F.3d 936, 946 (8th Cir. 2007) (citing *Int'l Union*, 499 U.S. at 199); *Hall v. Nalco Co.*, 534 F.3d 644, 649 (7th Cir. 2008) ("Because adverse employment action based on childbearing capacity will always result in 'treatment of a person in a manner which but for that person's sex would be different,' [the allegation] present[s] a cognizable claim of sex discrimination under Title VII") (internal citation omitted).
[39] *See Ingarra*, 2014 WL 688185, at *4.
[40] *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010).

5

felt that a male in her situation would not have suffered the same fate. These allegations support a *prima facie* case for gender discrimination.

### B. Sufficiency of Allegations

The Court next addresses Defendant's arguments that Plaintiff has not sufficiently alleged a gender discrimination claim. Defendant's arguments misconstrue Plaintiff's pleading burden.

First, Defendant argues that Plaintiffs have not provided any "direct evidence" of discrimination as a matter of law.[41] Defendant argues that Stotter's statements to Noll "could only be construed to relate to childbearing if taken out of context."[42] However, the requirement to bring "direct evidence" concerns Plaintiff's evidentiary burden, not her pleading burden.[43] In Title VII discrimination cases, "the ordinary rules of notice pleading apply."[44]

Next, Defendant argues that Plaintiff's allegations actually demonstrate that Defendant was not discriminating based on her gender.[45] These arguments are not persuasive because, on a motion to dismiss, the Court views the alleged facts in the light most favorable to the Plaintiff.[46]

Lastly, Defendant's citation to two lengthy complaints to support its arguments have no bearing on this case.[47] Neither of those cases involved allegations of gender discrimination based on child-bearing capacity.[48]

Rather, Plaintiff has alleged that Stotter made specific statements regarding her childbearing capacity before firing her. Thus, assuming Plaintiff's allegations are true and viewing

---

[41] Doc. 19 at 14-15.
[42] *Id.* at 14.
[43] *See Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012).
[44] *Keys*, 684 F.3d at 609.
[45] Defendant argues that Stotter provided a nondiscriminatory reason for Plaintiff's termination. Doc. 19 at 14-15. Defendant also argues that the close proximity between Stotter's knowledge of Noll's engagement and Noll's termination illustrates that Stotter terminated Noll for "gender-neutral reasons associated with being engaged." *Id.*
[46] *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006).
[47] Doc. 8 at 8-12.
[48] *See* Doc. 8-1 (concerning gender and race discrimination based on being an Asian American male); Doc. 8-2 (concerning discrimination based on Fair Housing Act violation).

Case No. 1:17-CV-886
Gwin, J.

them in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged a gender discrimination claim.

### IV. CONCLUSION

For the reasons above, the Court **DENIES** Defendant Club Fit's motion to dismiss.

IT IS SO ORDERED.

Dated: August 23, 2017    *s/    James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE